## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID CAMP | ) | |
| [Address Filed Under Seal Pursuant to | ) | |
| LCvR 5.1(c)(1)] | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LAURA BETH WALLER | ) | |
| [Address Filed Under Seal Pursuant to | ) | Case No. 1:_____ |
| LCvR 5.1(c)(1)] | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PROFESSIONAL EMPLOYEE SERVICES | ) | JURY TRIAL DEMANDED |
| d/b/a Insurance Branch | ) | |
| and | ) | |
| BRENDON CASSITY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DEFAMATION

Plaintiffs David Camp ("Camp") and Laura Beth Waller ("Waller"), by and through undersigned counsel, bring this complaint against Professional Employee Services ("Insurance Branch") and Brendon Cassity ("Cassity"), and allege:

### PRELIMINARY STATEMENT

1. Truth matters. Camp and Waller are both experienced Social Security attorneys and dedicated employees of the National Organization of Social Security Claimants' Representatives ("NOSSCR"), a specialized bar association devoted to advocating for the disabled community. They bring this action to vindicate their reputations for the malicious harm they have suffered at the hands of Cassity and Insurance Branch, both of whom repeatedly made false statements about

them to board members of the organization they honorably serve. Contrary to Defendants' false and self-serving statements—all of which were part of an effort to destabilize control of NOSSCR—Camp and Waller have acted appropriately with respect to the financial affairs of NOSSCR. Faced with a defamation campaign of this nature, others may have stepped aside to avoid conflict. But Camp and Waller choose to fight—for their reputations, for NOSSCR, and for the countless people who benefit from the organization's work.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because this case involves citizens of different states: Plaintiff David Camp is a citizen of Missouri, Plaintiff Laura Beth Waller is a citizen of North Carolina, Defendant Professional Employee Services d/b/a Insurance Branch is a citizen of Utah, and Defendant Brendon Cassity is a citizen of Florida; and the amount in controversy exceeds $75,000.

3.    This Court has personal jurisdiction over Insurance Branch and Cassity because the defamatory acts occurred in this judicial district.

4.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## THE PARTIES

5.    Camp is a citizen of Missouri and the Chief Executive Officer of NOSSCR.

6.    Waller is a citizen of North Carolina and the Chief Strategy Officer of NOSSCR.

7.    At all relevant times, Professional Employee Services LLC was a Utah limited liability company doing business as Insurance Branch.

8.    Insurance Branch is a citizen of Utah listing Cassity as its sole principal in Utah Department

of Commerce filings. Insurance Branch primarily functions to generate and distribute Medicare-related insurance leads to healthcare organizations.

9.  Cassity is a citizen of Florida and the sole principal officer of Insurance Branch.

## FACTS COMMON TO ALL COUNTS

### *Background*

10. Founded in 1979, NOSSCR is a specialized bar association for attorneys and advocates who represent Social Security Disability Insurance and Supplemental Security Income claimants throughout the adjudicative process.

11. NOSSCR is governed by a Board of Directors consisting of 24 leading Social Security industry professionals from all regions of the United States. NOSSCR also retains internal employees for day-to-day operations and the implementation of strategic guidance from the Board of Directors.

12. Founded in November 2022, the NOSSCR Foundation ("the Foundation") is an organization whose mission is to further the creation of education-related resources and to raise funds for members of NOSSCR and the disabled community.

13. Camp previously served as a member of NOSSCR's Board of Directors from September 2017 through March 2023, including serving as Board President from October 2021 through March 2023, when he accepted a role on NOSSCR's staff. He served as NOSSCR's Chief Policy Officer from March 2023 through July 2023, when NOSSCR's Executive Committee named him Interim Chief Executive Officer. Following a Board vote, Camp accepted his current role as Chief Executive Officer in January 2024. Since February 2023, Camp has additionally served as the NOSSCR Foundation Chief Executive Officer.

14. Camp is an attorney licensed to practice in Missouri, has represented disabled clients for more than 25 years, authored a regular column and Social Security treatise for Westlaw, is a past-President of the Missouri Lawyers Trust Account Foundation, and has testified before the Social Security Subcommittee of the United States House Committee on Ways and Means.

15. Waller is an attorney licensed to practice in North Carolina, Washington, and Georgia, has represented disabled clients for more than 10 years, and was previously a member of NOSSCR's Board of Directors from September 2022 through July 2023 and served on the Board of Directors Executive Committee. She left the Board and accepted a position as NOSSCR's Chief Strategy Officer in July 2023, and, additionally, as the Foundation's Chief Strategy Officer in August 2023.

16. Defendant Insurance Branch is formally registered as Professional Employee Services LLC in the State of Utah. Professional Employee Services was established in 2015, according to its publicly filed Certificate of Organization, to "[a]ssist with placement of employee's [sic] for legal services with Payroll Companies." Peter Skaggs was the original Managing Member of this entity.

17. In December 2018, Defendant Cassity became the sole Managing Member of Professional Employee Services LLC.

18. Defendant Insurance Branch had a business relationship with NOSSCR, including sponsoring and being an exhibitor at various NOSSCR presentations, conferences, and in electronic media materials. Included as part of that relationship was the permission to use the NOSSCR name and imagery on Insurance Branch websites.

19. Defendant Cassity was the sole decision-making representative of Insurance Branch in its interactions with NOSSCR.

20. On or about September 19, 2024, NOSSCR terminated a Premier Exhibitor Agreement between NOSSCR and Insurance Branch.

21. In response to this action, Defendants Insurance Branch and Cassity, through counsel, sent a letter containing numerous defamatory statements to all 24 members of the NOSSCR Board of Directors, without limitation as to further publication, causing severe harm to Camp's and Waller's respective professional and personal reputations.

22. Defendants' statements were false.

### *The October 24, 2024 Letter*

23. On October 24, 2024, an attorney representing Insurance Branch sent a letter (the "October letter") to Rick Fleming, President of the Board of Directors at NOSSCR.

24. At all relevant times, the attorney who sent the October 24, 2024 letter was acting as an agent of both Insurance Branch and Cassity.

25. The October letter was also sent to every member of the NOSSCR Board of Directors.

26. The October letter was nominally in response to a September 19, 2024 notice (the "September Notice") from NOSSCR terminating the Premier Exhibitor Agreement between NOSSCR and Insurance Branch.

27. The October letter recognized that the September Notice was copied to "Eileen Johnson, Counsel for NOSSCR."

28. The author of the October letter stated that he did not have Eileen Johnson's contact information.

29. The author of the October letter did not make any effort to secure this information, including, for example, reaching out to the author of the September Notice or Googling Ms. Johnson's name.

30. In 2023, members of the author's law firm communicated with Eileen Johnson in her capacity as legal counsel for NOSSCR and the Foundation multiple times.

31. Defendants chose not to send the October letter to "Counsel for NOSSCR," but instead chose to widely publish the false allegations contained therein to every member of the NOSSCR Board of Directors.

32. The October letter falsely stated that "Cassity has not shared . . . the information contained in this letter with any industry professionals."

33. Cassity had shared information contained within the October letter to industry professionals, specifically the 24 industry professionals who serve on NOSSCR's Board of Directors.

34. The October letter falsely stated that the September Notice "is a retaliatory measure" as part of a "consistent, offensive smear campaign" led by Camp.

35. The September Notice was not sent to retaliate against Defendants.

36. The September Notice was not part of a consistent or offensive smear campaign led by Camp.

37. The September Notice clearly set forth NOSSCR's justifications for terminating the Premier Exhibitor Agreement between NOSSCR and Insurance Branch.

38. In the October letter, Defendants falsely stated that Camp negotiated "an arrangement with Insurance Branch whereby Insurance Branch would fund and finance the Foundation," with that arrangement being "in place by March 2022."

39. The Foundation was authorized by the NOSSCR Board of Directors no earlier than September 2022.

40. The Foundation was not in existence in March 2022.

41. Camp specifically informed Defendant Cassity by email on or about September 12, 2022, that the Board of Directors "voted on 9/9 to form the NOSSCR Foundation."

42. On or about September 13, 2022, Cassity celebrated the news regarding the Foundation but also acknowledged that discussions regarding donations may have to wait "until it is set up."

43. The October letter falsely stated that Camp directed Insurance Branch "ad hoc" in the transfer of funds from Insurance Branch to NOSSCR and the Foundation.

44. There were multiple agreements in place between NOSSCR, the Foundation, and Insurance Branch specifically delineating amounts to be paid and, if a variable amount, how that amount would be calculated.

45. The October letter falsely stated that, in June 2023, Defendant Cassity was unfamiliar with Essex Strategies ("Essex") and therefore Cassity "questioned why Camp requested funds to be sent to Essex, rather than directly to the Foundation."

46. In a September 13, 2022 email to Camp, Defendant Cassity expressly acknowledged the existence of Essex and stated that he had "no problem sending payment."

47. The October letter falsely stated that Defendant Cassity did not discover that Essex was Camp's personal entity until after November 13, 2023.

48. In a September 12, 2022 email to Defendant Cassity, Camp wrote that Essex was "a firm that I've now started to be my primary entity."

49. On or about September 19, 2022, Camp returned a form to Defendant Cassity which was generated by Insurance Branch and completed by Camp which listed Essex as the receiving entity for payments under an agreement related to Medicare Advantage matters generated in Camp's private law practice. Cassity acknowledged receipt of that information via email on or about September 20, 2022. On that form, Camp selected that the bank account associated with Essex was an "individual" account, not a "business" account.

50. The October letter falsely stated that Defendant Cassity had some "disturbing realizations" following his unauthorized receipt of internal NOSSCR Foundation documents in November 2023, including Camp's and Waller's respective employment agreements with the NOSSCR Foundation.

51. The October letter falsely stated that Cassity was unaware of the compensation discussed in these employment agreements.

52. On or about July 9, 2023, to memorialize an in-person meeting between Camp and Defendant Cassity, Camp emailed Cassity regarding the specifics discussed. Among those specifics were Insurance Branch contributing "$50,000 monthly to NOSSCR . . . to cover added cost of Laura Beth [Waller]'s salary" and "$50,000 monthly to the NOSSCR Foundation . . . to cover salaries for David [Camp] and Laura Beth [Waller]."

53. The compensation Camp and Waller received in connection with their respective employment with NOSSCR was entirely above board and consistent with their respective agreements with NOSSCR.

54. The October letter falsely stated that Camp "appears to have caused NOSSCR and the Foundation to comingle funds . . . [a]nd whatever amounts Camp succeeded in persuading Insurance Branch to pay for the Foundation's benefit, he did so by employing a false representation as to the funds' use."

55. Camp did not cause NOSSCR to comingle funds.

56. Camp did not cause the Foundation to comingle funds.

57. Camp did not make any false representations to Insurance Branch in connection with any payments by Insurance Branch to the Foundation's benefit.

58. Read as a whole, Defendants falsely accused Camp and Waller of criminal conduct with respect to the financial affairs of NOSSCR.

59. These overarching defamatory statements, made in the October letter and released publicly, are expressly and implicitly false, and Defendants were aware of the false nature of each statement at the time of publication. Defendants, therefore, acted with actual malice in making each defamatory statement against Camp and Waller.

### *Defendants' Attempts to Characterize False Statements of Fact as "Opinions" Does Not Shield Them From Liability*

60. The October letter states, "To be abundantly clear, in this letter, Insurance Branch and Cassity report only those facts of which they possess firsthand knowledge. The conclusions they draw from those facts are merely opinions based on those facts."

61. By making this statement, Defendants clearly understood they were making defamatory statements about Camp and Waller and that they were therefore subjecting themselves to legal liability.

62. By making this statement, Defendants clearly intended to attempt to insulate themselves from liability for their defamatory statements.

63. "It would be destructive of the law of libel if a writer could escape liability for [defamatory] accusations of crime simply by using, explicitly or implicitly, the words 'I think.'" *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 64 (2d Cir. 1980) (quoted with approval by *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19 (1990)).

64. For this reason, it has long been held that "a defamation defendant cannot avoid liability merely by couching statements as 'opinions.'" *Hellmuth v. Efficiency Energy, L.L.C.*, 2016 WL 642352, at *3 (S.D. Tex. Feb. 18, 2016); see also *Milkovich*, 497 U.S. at 19.

65. Indeed, "[s]tatements couched as opinion may imply an assertion of objective fact." R. Smolla, 1 Law of Defamation § 6.28; see also *Milkovich*, 497 U.S. at 19 ("Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion

Jones is a liar,' can cause as much damage to reputation as the statement, "Jones is a liar."); *Donald J. Trump for President, Inc. v. WP Co. LLC*, 2023 WL 1765193, at *6 (D.D.C. Feb. 3, 2023) ("a mixed opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it.") (quotations and citations omitted).

66. Assertions based on "articulations of objectively verifiable events," "whether express or implied," are actionable as defamation. *White v. Fraternal Ord. of Police*, 909 F.2d 512, 523 (D.C. Cir. 1990). Further, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact." *Milkovich*, 497 U.S. at 18–19.

67. Defendants' accusations against Camp and Waller were express statements of fact.

68. At a minimum, Defendants' accusations against Camp and Waller were mixed opinions based on undisclosed facts.

69. Regardless, Defendants' accusations against Camp and Waller—individually and collectively—were defamatory.

70. As a result of these statements—the statements about Camp (the "Camp Allegations") and the statements about Waller (the "Waller Allegations")—Plaintiffs have suffered damages, including without limitation, damage to their respective reputations, damage to their respective personal brands and goodwill in the community as reputable attorneys, loss of potential income and goodwill associated with lost opportunities as a result of the negative publicity associated with these statements directed at leaders within their professional community, and associated long-term loss of goodwill and marketability.

## FIRST CLAIM FOR RELIEF
### (FOR LIBEL BY CAMP)

71. Plaintiffs hereby incorporate by reference each and every allegation set forth in Paragraphs 1 through 70.

72. Each of the defamatory statements (the "Camp Allegations"), taken in context of all the content of Defendants' October 24, 2024 letter and the circumstances under which it was published, directly convey the false and defamatory message that Camp falsely and fraudulently received funds from Defendants, fraudulently utilized entities outside NOSSCR or the NOSSCR Foundation to handle contributions, and violated the laws of the District of Columbia.

73. The Defendants intended for readers to understand that false message, and many readers understood the false messages as Defendants intended.

74. The Camp Allegations are libelous *per se* because they impute to Camp the commission of crimes and were intended to communicate that Camp is unfit for his occupation.

75. Each of the Camp Allegations is a false statement of fact.

76. At the time Defendants made the Camp Allegations, they knew they were false or acted with reckless disregard for their truth.

77. Defendants' publication of the Camp Allegations was not subject to any privilege.

78. As a direct and proximate result of the publication of the Camp Allegations, Camp has suffered injury to his reputation, shame, mortification, and mental anguish to his general damage in an amount to be proven at trial, but not less than $10,000,000.

79. Defendants' conduct as alleged herein was willful, wanton, and malicious and was done with conscious disregard for Camp's rights. Accordingly, an award of punitive and exemplary damages is appropriate.

## SECOND CLAIM FOR RELIEF
### (FOR LIBEL BY WALLER)

80. Plaintiffs hereby incorporate by reference each and every allegation set forth in Paragraphs 1 through 70.

81. Each of the defamatory allegations (the "Waller Allegations"), taken in context of all the content of Defendants' October 24, 2024 letter and the circumstances under which it was published, directly convey the false and defamatory message that Waller falsely and fraudulently received funds from Defendants, fraudulently coordinated with Camp to utilize entities outside NOSSCR or the NOSSCR Foundation to handle contributions, and violated the laws of the District of Columbia.

82. The Defendants intended for readers to understand that false message, and many readers understood the false messages as Defendants intended.

83. The Waller Allegations are libelous *per se* because they impute to Waller the commission of crimes and were intended to communicate that Waller is unfit for her occupation.

84. Each of the Waller Allegations is a false statement of fact.

85. At the time Defendants made the Waller Allegations, they knew they were false or acted with reckless disregard for their truth.

86. Defendants' publication of the Waller Allegations was not subject to any privilege.

87. As a direct and proximate result of the publication of the Waller Allegations, Waller has suffered injury to her reputation, shame, mortification, and mental anguish to her general damage in an amount to be proven at trial, but not less than $10,000,000.

88. Defendants' conduct as alleged herein was willful, wanton, and malicious and was done with conscious disregard for Waller's rights. Accordingly, an award of punitive and exemplary damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants as follows:

a.   Compensatory damages for each Plaintiff in an amount to be proven at the time of

trial but not less than $10,000,000 for each Plaintiff;

b.   Punitive damages for each Plaintiff in an amount to be proven at trial;

c.   Costs of suit incurred by Plaintiffs in this matter; and

d.   Such further and other relief as the Court might deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims, as to all issues so triable.


Dated: December 20, 2024                  Respectfully submitted,

                                          **Margulis Gelfand, LLC**

                                          /s/ *Justin K. Gelfand*
                                          Justin K. Gelfand (D.C. Bar No. 90023996)
                                          Gregory P. Bailey (D.C. Bar No. 1781925)
                                          1325 G St., NW, Suite 500
                                          Washington, DC 20005
                                          (202) 975-0895
                                          justin@margulisgelfand.com
                                          greg@margulisgelfand.com

                                          *Attorneys for David Camp and Laura Beth*
                                          *Waller*

13