EXHIBIT B

| No. | Paragraphs | False Statement | Reasons Why False |
|---|---|---|---|
| 1 | ¶¶ 32–33 | "The [Letter] falsely stated that "Cassity has not shared . . . the information contained in this letter with any industry professionals."" | "Cassity had shared information contained within the [Letter] to industry professionals, specifically the 24 industry professionals who serve on NOSSCR's Board of Directors." |
| 2 | ¶¶ 34–37 | "The [Letter] falsely stated that [NOSSCR's September 19, 2024, notice of the termination of the Premier Exhibitor Agreement] 'is a retaliatory measure' as part of a 'consistent, offensive smear campaign led by Camp.'" | NOSSCR's September 19, 2024, notice of the termination of the Premier Exhibitor Agreement "was not sent to retaliate against Defendants" and "was not part of a consistent or offensive smear campaign led by Camp." That notice "clearly set forth NOSSCR's justifications for terminating the Premier Exhibitor Agreement between NOSSCR and Insurance Branch." |
| 3 | ¶¶ 38–42 | "Defendants falsely stated that Camp negotiated 'an arrangement with Insurance Branch whereby Insurance Branch would fund and finance the Foundation,' with that arrangement being 'in place by March 2022.'" | "The Foundation was authorized by the NOSSCR Board of Directors no earlier than September 2022" and "was not in existence in March 2022." Also, "Camp specifically informed Defendant Cassity by email on or about September 12, 2022, that the Board of Directors 'voted on 9/9 to form the NOSSCR Foundation.'" Moreover, "[o]n or about September 13, 2022, Cassity celebrated the new regarding the Foundation but also acknowledged that discussions regarding donations may have to wait 'until it is set up.'" |
| 4 | ¶¶ 43–44 | Defendants "falsely stated that Camp directed Insurance Branch 'ad hoc' in the transfer of funds from Insurance Branch to NOSSCR and the Foundation." | "There were multiple agreements in place between NOSSCR, the Foundation, and Insurance Branch specifically delineating amounts to be paid and, if a variable amount, how that amount would be calculated." |
| 5 | ¶¶ 45–46 | Defendants "falsely stated that, in June 2023, Defendant Cassity was unfamiliar with Essex Strategies ("Essex") and therefore Cassity | "In a September 13, 2022 email to Camp, Defendant Cassity expressly acknowledged the existence of Essex |

| | | | |
|---|---|---|---|
| | | 'questioned why Camp requested funds to be sent to Essex, rather than directly to the Foundation.'" | and stated that he had 'no problem sending payment.'" |
| 6 | ¶¶ 47–49 | Defendants "falsely stated that Defendant Cassity did not discover that Essex was Camp's personal entity until after November 13, 2023." | "In a September 12, 2022 email to Defendant Cassity, Camp wrote that Essex was 'a firm that I've now started to be my primary entity.'" And "[o]n or about September 19, 2022, Camp returned a form to Defendant Cassity which was generated by Insurance Branch and completed by Camp which listed Essex as the receiving entity for payments under an agreement related to Medicare Advantage matters generated in Camp's private law practice. Cassity acknowledged receipt of that information via email on or about September 20, 2022. On that form, Camp selected that the bank account associated with Essex was an 'individual' account, not a 'business' account." |
| 7 | ¶ 50 | Defendants "falsely stated that Defendant Cassity had some 'disturbing realizations' following his unauthorized receipt of internal NOSSCR Foundation documents in November 2023, including Camp's and Waller's respective employment agreements with the NOSSCR Foundation." | |
| 8 | ¶¶ 51–53 | Defendants "falsely stated that Cassity was unaware of the compensation discussed in these employment agreements." | "On or about July 9, 2023, to memorialize an in-person meeting between Camp and Defendant Cassity, Camp emailed Cassity regarding the specifics discussed. Among those specifics were Insurance Branch contributing '$50,000 monthly to NOSSCR . . . to cover added cost of Laura Beth [Waller's] salary' and '$50,000 monthly to the NOSSCR Foundation . . . to cover salaries for David [Camp] and Laura Beth [Waller].'" Also, "[t]he compensation Camp and |

| | | | Waller received in connection with their respective employment with NOSSCR was entirely above board and consistent with their respective agreements with NOSSCR." |
|---|---|---|---|
| 9 | ¶¶ 54–57 | Defendants "falsely stated that Camp 'appears to have caused NOSSCR and the Foundation to comingle funds . . . [a]nd whatever amounts Camp succeeded in persuading Insurance Branch to pay for the Foundation's benefit, he did so by employing a false representation as to the funds' use.'" | "Camp did not cause NOSSCR to comingle funds" and "did not cause the Foundation to comingle funds." Also, "Camp did not make any false representations to Insurance Branch in connection with any payments by Insurance Branch to the Foundation's benefit." |