## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID CAMP, and<br>LAURA BETH WALLER<br><br>     Plaintiffs,<br><br>    v.<br><br>PROFESSIONAL EMPLOYEE SERVICES,<br>d/b/a Insurance Branch, and<br>BRENDAN CASSITY<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Case No. 24-3568 (RJL)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION
(September 2̲3̲ 2025) [Dkt. #11]

Plaintiffs David Camp ("Camp") and Laura Beth Waller ("Waller") (collectively

"plaintiffs") are executive officers of the National Organization of Social Security

Claimants' Representatives ("NOSSCR"). They brought a defamation lawsuit against

defendants Professional Employee Services, LLC d/b/a Insurance Branch ("Insurance

Branch") and Brendon Cassity ("Cassity") (collectively "defendants") for making

allegedly defamatory statements in a letter sent to the NOSSCR Board of Directors.

[Dkt. #12-1] ("the Letter"). In short, the Letter accused plaintiffs of mishandling the

defendants' funds, for which the defendants requested a refund and an investigation into

potential wrongdoing. Because the judicial proceedings privilege applies here and

therefore bars plaintiffs' claims, the Court will **GRANT** defendants' motion to dismiss.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

NOSSCR is a specialized bar association that provides support for attorneys who represent Social Security Disability Insurance and Supplemental Security Income claimants. Complaint ¶ 10 ("Compl.") [Dkt. #1]. NOSSCR is governed by a 24-member Board of Directors. *Id.* ¶ 11. The NOSSCR Foundation ("the Foundation") is a separate organization whose mission is to raise funds for NOSSCR members and the disabled community, and to help create education-related resources for NOSSCR causes. *Id.* ¶ 12. Plaintiff David Camp lives in Missouri and is the Chief Executive Officer of both NOSSCR and the Foundation. *Id.* ¶ 13. Plaintiff Laura Beth Waller lives in North Carolina and is the Chief Strategy Officer of both NOSSCR and the Foundation. *Id.* ¶ 15.

Defendant Professional Employee Services LLC, doing business as Insurance Branch, is a Utah business that generates and distributes Medicare-related insurance leads to healthcare organizations. *Id.* ¶¶ 8, 16. Defendant Brendon Cassity lives in Florida and is the sole principal of Insurance Branch. *Id.* ¶ 8. Insurance Branch had a business relationship with NOSSCR, through which Insurance Branch sponsored various NOSSCR presentations and conferences. *Id.* ¶ 18. This relationship ended around September 19, 2024, when NOSSCR terminated the Premier Exhibitor Agreement ("Exhibitor Agreement") between the two parties. *Id.* ¶ 20.

On October 24, 2024, in response to the termination of the Exhibitor Agreement, an attorney representing Insurance Branch sent a letter to the NOSSCR Board of Directors. *Id.* ¶¶ 21, 23. The Letter requested that NOSSCR refund Insurance Branch $81,665 in payments that it had previously disbursed pursuant to the now-terminated

Exhibitor Agreement. *See* Letter at 2. It also said that Insurance Branch believed that NOSSCR's decision to terminate the Exhibitor Agreement was a "retaliatory measure" responding to Insurance Branch's decision to cease funding the Foundation, consistent with a recent "smear campaign" waged by Camp against defendants. Compl. ¶ 34.

The Letter also explained the reasons for why Insurance Branch had stopped funding the Foundation. The Letter said Camp "appears to have caused NOSSCR and the Foundation to commingle funds," potentially "diverted funds from Insurance Branch to himself," and made a "false representation" when persuading Insurance Branch to fund the Foundation because he failed to disclose that almost all of Insurance Branch's contributions would go toward Camp and Waller's salaries, rather than funding industry outreach. *See* Letter at 5; Compl. ¶ 54. For those reasons, the Letter requested that NOSSCR refund to Insurance Branch $268,000 that had previously been paid to the Foundation and to submit to an investigation that would verify whether these, or any additional funds, failed to reach their intended destinations. *See* Letter at 6.

In December 2024, plaintiffs filed a Complaint for Defamation against defendants. Plaintiffs each assert a claim for libel based on the allegedly defamatory statements contained in the Letter. The defendants moved to dismiss plaintiffs' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Memorandum in Support of Motion to Dismiss for Failure to State a Claim ("Defs.' Mot.") [Dkt. #12]. Plaintiffs filed a brief in opposition, ("Pls.' Opp.") [Dkt. #14], and the defendants filed a reply brief. ("Defs.' Reply") [Dkt. #15]. The motion is now ripe for decision.

3

## II.    LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is proper if the plaintiffs have "failed to state plausible grounds for relief." *Winder v. Erste*, 566 F.3d 209, 213 (D.C. Cir. 2009). In evaluating a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint "in favor of the plaintiffs, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). However, the Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.* Although the factual allegations need not be detailed, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Factual allegations, even though assumed to be true, must still be "enough to raise a right to relief above the speculative level." *Id.*

When assessing a motion to dismiss a defamation claim, the Court can consider the document containing the allegedly defamatory statements—even if it is not attached to the complaint—if the authenticity is not disputed, if it was referenced in the complaint, and if it is integral to plaintiffs' claim. *See Libre by Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 153–54 (D.D.C. 2018). Such is the case here, so the Court may consider the Letter without converting defendants' motion into a motion for summary judgment. *Id.*; *Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 105 (D.D.C. 2017).

4

To make out a *prima facie* case of defamation under District of Columbia law, a plaintiff must allege facts showing:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement is actionable as a matter of law irrespective of special harm, or that its publication caused the plaintiff special harm.

*Marsh v. Hollander*, 339 F. Supp. 2d 1, 5 (D.D.C. 2004) (quoting *Crowley v. N. Am. Telecomm. Ass'n*, 691 A.2d 1169, 1172 n.2 (D.C. 1997)).

### III.    ANALYSIS

Defendants argue that plaintiffs' libel claims are barred by the judicial proceedings privilege. Defs.' Mot. at 11–14. In considering a 12(b)(6) motion, it is appropriate for the Court to decide the preliminary question of whether this absolute privilege applies. *Armenian Assembly of Am., Inc. v. Cafesjian*, 597 F. Supp. 2d 128, 140 (D.D.C. 2009). I agree that the judicial proceedings privilege bars plaintiffs' claims here.

The District of Columbia has adopted the version of the judicial proceedings privilege set forth in § 586 of the Restatement (Second) of Torts, which provides:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

*Messina v. Krakower*, 439 F.3d 755, 760 (D.C. Cir. 2006) (quoting Restatement (Second) of Torts § 586 (1977)); *see also Finkelstein, Thompson & Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 338 (D.C. 2001). The privilege "applies to a range of

potential participants in a legal proceeding—including attorneys, parties, judicial officers, witnesses, and jurors." *Marsh*, 339 F. Supp. 2d at 8 (D.D.C. 2004).

The privilege applies not only in pending legal proceedings, but also "to parties to potential litigation that has not yet commenced." *Id.* The Court is mindful that this privilege is "not lightly conferred" and that "caution is warranted" where, as here, no judicial proceeding has begun. *Finkelstein*, 774 A.2d at 341.

Among the pre-litigation communications that the privilege protects are "written correspondence between parties' counsel concerning threatened lawsuit[s];" "statements relating to threat[s] of litigation," including statements "analogous to [those] that are often contained in demand letters;" and "statements made during settlement discussions." *Krakower*, 439 F.3d at 760. That is because the judicial proceedings privilege was designed to advance the "strong public policy in favor of individuals privately resolving their disputes without resort to the judicial process." *Conservative Club of Washington*, 738 F. Supp. at 14 ("to hold an attorney liable for such statements would disrupt the proper functioning of the adversarial process and certainly have a chilling effect on zealous advocacy"); *see also Messina v. Fontanta*, 260 F. Supp. 2d 173, 179 (D.D.C. 2003) ("private and amicable resolution of disputes is to be encouraged, not discouraged, as would happen if every lawyer's letter could provoke a defamation suit.").

For the privilege to apply, "two requirements must be satisfied: (1) the statement must have been made in the course of or preliminary to a judicial proceeding; and (2) the statement must be related in some way to the underlying proceeding." *Arneja v. Gildar*, 541 A.2d 621, 623 (D.C. 1988). Both are satisfied here.

The first prong is satisfied when the allegedly defamatory communication "clearly raise[s] the specter of future litigation," particularly if the "purpose of the letter was to put [plaintiffs] on notice of possible legal action." *American Petroleum Institute v. Technomedia Intern., Inc.*, 699 F. Supp. 2d. 258, 269 (D.D.C. 2010). The test is also satisfied if it is clear that the communication was sent for the "purpose of attempting settlement prior to litigation." *Krakower*, 439 F.3d at 761. Neither an "actual outbreak of hostilities" nor a "clear, unequivocal threat of a lawsuit" is required. *Finkelstein*, 774 A.2d at 343. The threat of litigation can be implicit. *Id.* at 342.

Defendants' letter falls within these contours. As defendants argue, "[t]he Letter is, at bottom, a demand letter." Defs.' Mot. at 12. Indeed, the Letter made several express requests. Insurance Branch asked that NOSSCR refund $81,665 in payments that it had previously disbursed to NOSSCR pursuant to the cancelled Exhibitor Agreement. Letter at 7. Insurance Branch also requested an additional refund of $268,000 for the funds that were "earmarked…to be used for the Foundation's industry outreach and support, not Camp's and Waller's personal salaries." *Id.* The Letter further asked NOSSCR and the Foundation to "submit to—and give Insurance Branch full access to—a complete audit and accounting, performed by a professional of Insurance Branch's choosing, of NOSSCR's and the Foundation's receipt and use of all funds imparted to them by Insurance Branch." *Id.* The results of that audit would then inform whether Insurance Branch would seek an additional refund for diverted funds. *Id.* Finally, the Letter expressly requested that "NOSSCR and its board perform their own thorough, searching, independent investigation" of the possible mismanagement of Insurance

7

Branch's financial contributions based on the observations detailed in the Letter. *Id.*
Thus, the clear purpose of the Letter was to sound the alarm on possible misconduct and
demand corrective action. The threat of legal escalation may not have been express, but
it surely was implicit.

Plaintiffs argue that the allegedly defamatory communication was *not* a demand
letter, but "simply a defamatory letter sent…on legal letterhead." Pls.' Resp. at 7. They
contend—without citing compelling legal support—that the privilege should not apply
because the Letter did not provide deadlines for the demands, nor did it expressly
threaten to file suit or take any other specific action. *Id.* at 7–8.

I am not persuaded by plaintiffs' arguments. On its face, the Letter alerted the
plaintiffs of perceived wrongdoing, demanded specific corrective actions, and suggested
a proposed course of action that might allow the parties to resolve their differences
outside of the judicial process. The letter thus lies comfortably within the ambit of the
judicial proceedings privilege. *Krakower*, 439 F.3d at 760 (holding that the privilege
applies to letters "sent for the very purpose of attempting settlement prior to litigation.").

The second prong of the judicial proceedings privilege test is easily satisfied as
well. The inquiry is whether the defamatory statements have some relevance to the
underlying potential legal proceeding. For instance, in *Krakower*, the court found that the
relevancy prong was satisfied when the allegedly defamatory statements "defined the
nature of the dispute between the two parties and suggested the claims [the defendants]
would bring if [the plaintiff] did not settle the matter." *Krakower*, 439 F.3 at 761. That is
analogous to the scenario we have here: the Letter's allegedly defamatory statements

8

defined the nature of the dispute between the parties and were directly related to the subject matter of a possible legal battle if the parties' differences could not be resolved.

Because both prongs of the test are satisfied, the judicial proceedings privilege applies here, and plaintiffs' claims cannot proceed.

## IV.    CONCLUSION

Because the Letter is best viewed as a demand letter and an attempt to resolve the parties' differences without resorting to the judicial process, the judicial proceedings privilege applies and bars plaintiffs' claims.   The Court will therefore **GRANT** the defendants' motion to dismiss.

Because the Court is allowed to consider the allegedly defamatory Letter in question on defendants' motion to dismiss, it would be futile for plaintiffs to try to amend their complaint to state a defamation claim based on that Letter.  *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  The Court will therefore **DENY** Plaintiffs' request to amend their complaint.  An Order consistent with the above accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

9